Bonser v. Nottingham                CV-96-343-M    05/20/97
               UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE


Terry L. Bonser; Mary L. Parks;
and Cedar Waters Village Partnership,
     Plaintiffs,

     v.                                    Civil No. 96-343-M

Town of Nottingham, NH, et al.,
     Defendants.


                        **O R D E R**


     Plaintiffs' cognizable claims in this case can be described
in a simple and straightforward manner:  The partnership says
neither it nor its current partners have been found to be in
contempt of the New Hampshire Superior Court.  They say they were
never given notice that they should show cause why they should
not be held in contempt; never have been told what they did or
failed to do that constituted contempt; never had a hearing; that
no court of competent jurisdiction ever made findings as to what
they did or failed to do that amounted to contempt; that no court
ever entered a contempt judgment against them; and that no court
ever imposed any monetary sanction against them as contemnors.
Nevertheless, they say, the state and town are trying to seize
and sell their real property in order to pay contempt sanctions.
(Plaintiffs say the mistake is that the sanctions were actually
assessed against Robert Bonser and a corporation he controlled).
Plaintiffs bring suit under 42 U.S.C. § 1983 alleging violations
of their rights not to be deprived of their property without due
process of law.

For some inexplicable reason, defendants steadfastly resist resolving these simple claims by simply filing certified copies of the records of a New Hampshire court of competent jurisdiction showing that these plaintiffs were given notice, were given an opportunity to be heard, were found to be in contempt, and were sanctioned. Instead, defendants persist in arguing, by extrapolation and interpretation and through inference, that phrases in certain state court orders and opinions and pleadings, can be construed as necessarily implying the procedural prerequisites to a lawful seizure of plaintiffs' property. Defendants also persist in arguing that because these plaintiffs previously tried to raise these same due process arguments in state court, and no state court apparently accepted their arguments (nor has a state court apparently discussed plaintiffs' due process arguments), it follows that the state courts must have considered and rejected them on the merits.

But, it should not be necessary to invest an inordinate amount of effort and time trying to divine the meaning of pertinent state court proceedings by argumentative inference — surely if these plaintiffs were actually held in contempt and sanctioned, the state courts' records will precisely show when, why, and how much.

There are, of course, circumstances under which plaintiffs' property could lawfully be taken to satisfy the contempt and sanction obligations of others who once owned the property. For example, perhaps the transfer of the property from Robert Bonser

2

and his corporation to plaintiffs was "fraudulent," and perhaps that fraudulent transfer has been set aside by a court of competent jurisdiction. If so, it would seem a relatively simple matter for defendants to file a certified copy of such a judgment, in which case, obviously, plaintiffs would not hold valid title to the property. If the former owners/contemnors still own it, the property of course is lawfully subject to execution to satisfy their debt. Or, perhaps a valid prejudgment or postjudgment attachment for part or all of the debt (the town at least claims to have such an attachment) accompanied the property when legal title was transferred to plaintiffs. Again, it would seem to be a relatively simple matter to demonstrate such facts, although defendants still have not done so despite having been told repeatedly what the court perceives the preliminary issues to be.

If these facts, which are essential to resolving plaintiffs' due process claims, cannot be shown simply and directly from state court records, then defense counsel ought to say so, to allow all parties and the court to move on to consideration of the merits of plaintiffs' federal constitutional claims. But, as the court stressed at the most recent hearing, mere off-the-cuff opinions and argumentative inferences drawn from ambiguous documents to the effect that these plaintiffs "must have been" held in contempt by a court of competent jurisdiction, or that their property "must be" subject to seizure merely because it was once owned by an adjudicated contemnor, or because "everyone

3

knows" the use of the property continued to violate local zoning laws after title transferred, are not helpful in resolving the matter.

The Attorney General points out that 42 U.S.C. § 1983 was recently amended to provide that injunctive relief in a civil rights action against state judicial defendants cannot be granted unless a declaratory decree was violated or declaratory relief was unavailable. Even assuming that the recent amendment would be applicable in this case,[1] the overriding point would seem to be that declaratory relief <u>is</u> available, and such relief will have an injunctive effect (and, if not, the declaratory judgment would itself be enforceable by injunction). To resolve the matter on the merits (and to avoid declaratory relief and injunctive relief) the defendants will still be required at some point to show that due process was afforded these plaintiffs. (While it may not be defendants' initial "burden" to do so, the court has determined that plaintiffs at this early juncture have made sufficient allegations to state a cause of action, and that requiring them to do much more to "prove the negative" beyond asserting it, would, at this point, require this court to review the entire state court record to confirm the <u>absence</u> of evidence showing <u>they</u> were afforded due process. (To prove no due process

_____

[1] The Federal Court Improvement Act of 1996, Public Law Number 104-317, which added the language protecting judicial officers from injunctive relief was passed on October 19, 1996, while this case was pending. The parties have yet to brief the retroactive effect the Act might have on substantive rights arising prior to its passage.

4

was afforded them, the plaintiffs could file the entire state court record as evidence that nothing therein purports to be a judgment against them.)  By far the easiest and most efficient and cost-effective way to determine at this early stage whether there is anything to plaintiffs' claims is to have the defendants point to those parts of the state court record that affirmatively establish that due process was afforded to these plaintiffs.  If there are no unambiguous notices, orders, attachments or judgments among the state courts' records, then either defendants will concede, or a more complicated approach will be required and a further status conference will be held.

The Attorney General may also be invoking the amended version of § 1983 as precluding future injunctive relief designed to prevent execution against plaintiffs' property.  To the extent the Attorney General is concerned about the type of permanent relief that might be entered in this case, that concern is premature — declaratory relief will be available if plaintiffs are correct in their factual assertions.  Declaratory relief would, of course, assume that all defendants will act in a manner consistent with the declaratory judgment, and that injunctive relief would be entirely unnecessary.  (Plaintiffs can amend their pleadings to conform them to the relief available.)

If the restriction on injunctive relief imposed by the recent amendment to § 1983 is construed by the Attorney General as preventing the court from maintaining the status quo via temporary prospective injunctive relief, while an orderly

5

determination of the merits of plaintiffs' constitutional claims proceeds, then the amendment would seem to conflict with the court's inherent authority to stay state court proceedings in aid of its own jurisdiction, see e.g. 28 U.S.C. § 2283. If it becomes necessary, that apparent conflict will be resolved. It is not necessary to do so now, however, because defendants are not threatening imminent seizure of plaintiffs' property. The court also notes that counsel have agreed to give plaintiffs and this court advance warning before they do act to seize the property, sufficient to permit the court to consider a request for extraordinary relief. If that eventuality arises — imminent seizure efforts — the court will consider issuing a temporary restraining order against the appropriate sheriff or executing state official[2] as necessary to prevent seizure and disposition of the property in question and to preserve this court's civil rights jurisdiction. Once again, however, injunctive intervention should not be necessary since all parties no doubt desire a correct and just answer, on the merits, before any deprivation of property occurs.

At this early stage of the litigation, defendants must focus on the preliminary issues that have been identified. As directed orally on May 14, 1997, defense counsel[3] shall file with this

---

[2] As it is the sheriff, not the state court or the town, who would levy on the writ of execution and sell the property, the sheriff's action would be a proper object of an injunction. See N.H. Rev. Stat. Ann. §§ 104:5 and 527:17.

[3] If the Attorney General seeks to defend this case by claiming that § 1983, as amended, even precludes his producing

court, by May 23, 1997, certified copies of the judgments, orders, or documents from courts of competent jurisdiction which establish that the writ of execution against plaintiffs' property is based upon an actual judgment entered against these plaintiffs consistently with requisite due process, or otherwise represents a lawful taking under applicable federal standards. Defense counsel shall also file an explanatory memorandum addressing the issues previously raised by the court (Order, April 14, 1997). The documents to be submitted must show either that these plaintiffs, the partnership and its individual partners, 1) _were_ held in contempt; 2) _were_ sanctioned in an amount certain, and 3) _were_ afforded fundamental due process of law under the federal constitution, or, alternatively, that the transfer of title to the subject property was set aside by a court of competent jurisdiction as a fraudulent transfer or otherwise, or, that notwithstanding the transfer of title to the property, it still is available to satisfy judgments entered against its former owners (_e.g._ subject to valid prejudgment attachment).

Based on the lack of progress to date in getting efficiently to the heart of the claims raised by plaintiffs, the court will schedule regular status conferences to insure that the issues are in fact being addressed and that the parties remain focused, for the time being at least, on the identified and potentially dispositive issues. If defense counsel can make the requisite

court records that establish the due process he says was afforded, then he may take solace in the contemporaneous order that the defendant town's counsel file the documents.

7

preliminary showing, this case ought to come to a speedy conclusion. If they cannot, then further scheduling orders will be issued to facilitate the orderly consideration and disposition of plaintiffs' claims.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 20, 1997

cc:  Terry L. Bonser
     Mary L. Parks
     William A. Dewhurst, Esq.
     William G. Scott, Esq.
     Christopher P. Reid, Esq.
     Douglas N. Steere, Esq.